RAWLEIGH, MOSES & CO.

v.

KORNBERG.

RAWLEIGH, MOSES & CO.

v.

REYNOLDS.

Nos. 14884, 14885.

United States Court of Appeals, Eighth Circuit.

Feb. 15, 1954.

T. R. Johnson, Sioux Falls, S. D., Walter H. Moses, Chicago, Ill., on the brief, for appellant.

R. G. May, Sioux Falls, S. D., Gene McDonnell, Sioux Falls, S. D., on the brief, for appellees.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

This is an action at law. The plaintiff-appellant is an Illinois corporation with its principal place of business in Chicago, Illinois. The Dakota Steel Products Company, a defendant at the commencement of the action, is a South Dakota corporation with its place of business at Sioux Falls, South Dakota. At the time this action was commenced in 1952 the defendants Howard R. Kornberg and Grant Reynolds were citizens of South Dakota, and both were officers of the corporate defendant. At the time of the trial Kornberg was living in the state of Mississippi.

Jurisdiction of the federal court is predicated upon diversity of citizenship and the amount involved.

A default judgment was taken against the Dakota Steel Products Company.

The complaint alleges two causes of action against the defendants Kornberg and Reynolds. The first is based upon a written guaranty and the second is for damages based upon alleged fraud. The case was tried to the court without a jury. At the close of plaintiff's evidence counsel for defendants moved for judgment against plaintiff on the ground that plaintiff had failed to sustain the burden of proof cast upon it by the pleadings. The motion was sustained. The court made findings of fact and conclusions of law and entered judgment for the defendants Kornberg and Reynolds and dismissed the complaint upon the merits with prejudice and with costs.

The complaint alleges in the first cause of action that plaintiff Rawleigh, Moses & Company was at all times pertinent engaged at its office in Chicago, Illinois, in the factoring business, that is in purchasing accounts receivable, and defendant corporation was engaged at Sioux Falls, South Dakota, in the sale of farm equipment, particularly sprayers manufactured at Fargo, North Dakota. That on or about April 25, 1951, the parties entered into a Factoring Agreement, including a supplemental Drop Shipment Agreement, by the terms of which plaintiff agreed to purchase of the defendant corporation accounts receivable that conformed to the requirement specified in the contracts. These written contracts were prepared by plaintiff in Chicago after they had been discussed by the parties at plaintiff's office in Chicago and sent by mail to defendants in Sioux Falls, together with a "Guaranty." These three instruments were signed by defendants and returned to plaintiff in Chicago by mail. The Guaranty contract was signed only by Kornberg and Reynolds, though Kornberg after his signature wrote the word "President" and Reynolds after his name wrote "Sec. & Treas."

The Factoring Agreement provided in part that

"First. We [Dakota Steel Products Company] agree that

"A. We will offer to assign and sell to you all of our accounts receivable and other choses in action owned, created or acquired by us in the regular course of our business (all of which are designated collectively hereafter as 'Account' or 'Accounts').

"B. We will not sell or assign any Accounts to or apply for or secure any advance thereon from any other person, firm or corporation during the continuance of this agreement."

About May 15, 1951, defendant company wrote and mailed to plaintiff a letter reading:

"Re: Tupelo Farm Equip. Co.
"Tupelo, Miss.
"Gentlemen:

"There is a good prospect of this customer ordering a carload of Cultisprays, which would amount to approximately $40,000.00 worth of business.

"Would you please advise us on what terms we may ship this merchandise, preferably on a 30 day open account basis?

"Thanking you in advance for your early reply in this matter, we remain

"Very truly yours,
"Dakota Steel Products Company
by
"(signed) Grant Reynolds
"lh"

Thereafter, on or about May 17, 1951, defendants forwarded to plaintiff the Tupelo Farm Equipment Company order for a carload (300) of Cultisprays. Plaintiff thereupon investigated the financial status of the Tupelo Farm Equipment Company and approved a credit up to $40,000 predicated upon the order. Afterward plaintiff advanced to defendant company the sum of $41,202.-50.

Plaintiff thereafter, about June 26, 1951, received from Tupelo Farm Equipment Company a letter saying in part:

"We have in our files a letter given to us on May 17, accompanying an order given to the Dakota Steel Products Co. of the same date, whereby Dakota Steel Products Co. underwrites the sales and collections of order given on May 17th.

"We are only giving this information in the event these sprayers are not sold on notice due date and you are wondering why payment has not been made."

The foregoing letter was the first knowledge plaintiff had that the Tupelo Farm Equipment Company's order to defendant company was not a bona fide transaction, and that defendants had secretly qualified said order by a letter dated May 17, 1951. That letter to the Tupelo Farm Equipment Company signed by defendant Kornberg as president of defendant company read in part: "We are taking this order with the understanding that we will underwrite the sales and collections."

Thus instead of a sale of the carload of sprayers the transaction amounted to a consignment only and violated the Factoring Agreement.

For the reasons set out in plaintiff's first cause of action plaintiff demanded judgment against defendants for an unpaid balance of $34,754.70; and as security therefor plaintiff claimed a lien upon the unsold sprayers shipped to the Tupelo Farm Equipment Company, and a judgment for costs.

The defendants Reynolds and Kornberg admit their signatures to the Guaranty contract sued upon, but allege that they signed only as officers of the defendant company and that they are not personally liable for the losses claimed.

In its second cause of action plaintiff realleges the allegations of its first cause of action and asks for damages on the ground of fraud in the same amount claimed to be due in its first cause of action.

Hamilton Moses, Jr., testified for plaintiff. He is a director and the president of plaintiff corporation. He identified the contracts and letters introduced in evidence, and he was asked and answered, also, as follows:

"Q. Now, Mr. Moses, in factoring this account with the Tupelo Company, evidenced by Exhibit 11, did you rely on * * * the factoring agreement and guarantees and these representations and statements made by Mr. Reynolds to you? A. I did.

"Q. If you had known the facts as they existed afterwards and came to light, would your company have factored this account? * * * A. We certainly would not."

Since a default judgment has heretofore been entered against the corporate defendant the only question for consideration at present relates to the liability of the individual guarantors, Kornberg and Reynolds. The trial court found facts and conclusions of law with respect to their alleged liability as follows:

That late in the month of April, 1951, documents marked as Exhibits 1, 2 and 3 and entitled "Factoring Agreement between Rawleigh, Moses & Co., Inc., and Dakota Steel Products Co., Inc.," and "Guaranty" respectively were mailed by Rawleigh, Moses & Co., Inc., from Chicago, Illinois, to Dakota Steel Products Co., Inc., at Sioux Falls, South Dakota; that on April 30, 1951, such documents were returned by mail to Rawleigh, Moses & Co., Inc., Exhibits 1 and 2 having been executed by Dakota Steel Products Co., Inc., by its President, Howard R. Kornberg, and by the defendant, Grant Reynolds, as Secretary and Treasurer; Exhibit 3, designated "Guaranty", executed by Grant Reynolds as Secretary and Treasurer of said corporation in conjunction with the Defendant, Howard R. Kornberg, who signed as President.

That at no time did Rawleigh, Moses & Co., Inc., request the Defendants Howard R. Kornberg and Grant Reynolds as individuals to execute the referred to Guaranty as guarantors; and that the said defendants did not sign said Guaranty in their individual capacity; that there was no consideration to the defendants Howard R. Kornberg and Grant Reynolds for their execution of Exhibit 3, the purported Guaranty; that at no time was there a meeting of the minds between plaintiff and defendants Howard R. Kornberg and Grant Reynolds with respect to the capacity in which they were executing the purported Guaranty.

That no fraud, misrepresentation, deceit or wrongful act of any kind was committed or practiced by the defendants Howard R. Kornberg or Grant Reynolds with respect to the business transaction between the plaintiff and Dakota Steel Products Co., Inc., and the defendants Howard R. Kornberg and Grant Reynolds.

That the defendants Howard R. Kornberg and Grant Reynolds received nothing of value as a result of the transactions complained of in the plaintiff's complaint.

And from the foregoing findings of fact the court made the following Conclusions of Law:

That upon the facts and the law the plaintiff is entitled to no relief against the defendants Howard R. Kornberg and Grant Reynolds.

That the purported Guaranty does not constitute an enforceable contract of guaranty between the plaintiff and the defendants Howard R. Kornberg and Grant Reynolds.

The appellant contends: 1. That the court erred in granting appellees' motion for a dismissal and in entering Findings of Fact and Conclusions of Law and Judgment in accordance therewith, arguing that

a. The factoring contract, supplement thereto, and guaranty are Illinois contracts;

b. Notice of the acceptance of the guaranty was not necessary;

c. A director or officer of a corporation may not escape personal liability by

adding his official designation after his name; and that

d. Appellant may recover for appellees' fraud.

And

2. The court erred in excluding Exhibit 31.

■ In reviewing on appeal from a judgment of dismissal in a case tried without a jury, this court must observe Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; that is, in this case the defendants, as the prevailing parties, are entitled to the benefit of all inferences which reasonably can be drawn from the evidence viewed in the light most favorable to defendants. Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 150 A.L.R. 1056; Holt v. Werbe, 8 Cir., 198 F.2d 910, 917; United States v. Arkansas Power & Light Co., 8 Cir., 207 F.2d 943, 945.

■ In this instance the court must observe, also, that defendants' motions for judgment of dismissal were made and sustained at the conclusion of plaintiff's evidence. The evidence of the plaintiff is undisputed. The judgment directed for the defendants must, therefore, depend for support upon the failure of that evidence to make a prima facie case. The question thus presented is one of law.

The appellees Kornberg and Reynolds admitted of record that they signed the "Guaranty" sued upon but claim that they signed as officers of the corporate defendant only. They accordingly deny all personal liability by reason of the Guaranty. It is not claimed that this contention was in any way communicated to the appellant. Counsel for appellees contend, however, and the court held, that Kornberg and Reynolds are not personally liable because (1) they were not required to execute the "Guaranty" as individuals, (2) that there was no consideration to them for their signatures, and (3) that there was no acceptance by appellant of the guaranty.

While it is true appellees were not required to execute or sign the guaranty as individuals, neither is it shown that they were *required* to sign as officers of the corporation. The reason for having appellees sign the "Guaranty" is clearly expressed in the guaranty itself. It reads:

"In order to induce Rawleigh, Moses & Co., Inc., (hereinafter called 'Factor') to enter into the foregoing [Factoring] agreement and to continue thereunder and under any and every modification or amendment thereof, and in consideration thereof the undersigned and each of them jointly and severally with each other and with the signatory or signatories of the foregoing agreement do hereby guarantee to Factor the due performance of the foregoing [Factoring] agreement and of each and every modification and amendment thereof and do further guarantee to Factor the prompt payment when due of any and all moneys agreed to be paid to Factor by said signatory or signatories under the foregoing [Factoring] agreement or under all other obligations however created. * * *

"Undersigned agree that the liability assumed hereunder is primary, direct, unconditional and enforceable without prior resort to the signatory or signatories of the foregoing [Factoring] agreement or to any security or to the obligation of any other person held by Factor. * * *

"This guaranty shall continue in force until actual receipt by Factor from undersigned of written notice of termination, whereupon this guaranty shall continue in effect as to all transactions under the Factoring Agreement which had their inspection prior to such receipt. * * *"

Hamilton Moses, Jr., testified as a witness for plaintiff-appellant. He is a director and president of plaintiff company. His testimony covered the nature of the business of plaintiff company and of its transactions with defendants. Since the questions presented on this appeal are primarily questions of law, only so much of the testimony will be reviewed as may be necessary to understand the legal questions presented. In

general his testimony supports the allegations of the complaint in respect of the business transactions involved.

It is undisputed that the Factoring Agreement between the appellant and the corporate defendant Dakota Steel Products Company was properly executed, delivered, accepted and became effective on the date it bears, namely, April 28, 1951. Attached to that contract and executed and delivered in the same way was the Guaranty contract involved in this dispute. Some of the provisions of the Factoring Agreement are pertinent to the contentions of the parties on this appeal. They are in brief as follows:

"G. We warrant to you that each and every Account sold to you hereunder (1) will represent a completed delivery in fulfillment in every respect of the terms, conditions and specifications of a bona fide, uncancelled, and unexpired sale to a customer * * * and (4) will not represent a delivery of merchandise upon 'consignment', 'guaranteed sale', 'sale or return' or similar terms * * *."

The foregoing provision was violated.

Part "Third" of the Factoring Agreement provided:—

"G. If the form of Guaranty found on the last page hereof has been executed, such Guaranty is made a part hereof;

"H. * * * This agreement and the attached Guaranty are executed in Illinois and all acts, agreements, transfers and transactions thereunder and all rights and liabilities of the parties to this Agreement and to the Guaranty shall be governed as to validity, enforcement, interpretation, construction, effect and in all other respects by the laws of the State of Illinois, and shall inure to the benefit of and shall be binding upon the parties thereto and their respective heirs, legal representatives, successors and assigns. * * *

"Your acceptance of the foregoing agreement will be evidenced by your execution of the accompanying duplicate original executed by us below and by returning the same to us * * *."

The contracts were prepared by the appellant in its office in Chicago and sent by mail to the corporate defendant at Sioux Falls, South Dakota, where they were executed by defendants and returned by mail to appellant in Chicago. All business between the parties was thereafter carried on in reliance by appellant upon the validity of the contracts. More than $40,000 was paid by appellant to defendant corporation for the Tupelo Farm Equipment account in reliance upon the validity of the Factoring Agreement and the Guaranty signed by appellees.

In reference particularly to the Guaranty, Mr. Moses, president of appellant corporation, testified that before sending the copy to defendants to be signed he wrote underneath the first signature line in blue ink the name Howard R. Kornberg, Jr., underneath the second line the name Howard Kornberg, and under the third line Grant Reynolds; that when the copies were returned he observed that Howard R. Kornberg, Jr., had signed his name and below his signature to the right the word "President"; that the name Howard Kornberg written by him (Moses) below the second line was crossed out; and that on the third line Grant Reynolds had signed his name and below it to the right the words "Sec. & Treas." When Mr. Moses observed that Kornberg senior had not signed the Guaranty he called Mr. Reynolds on the telephone and inquired why it had not been done, and Reynolds stated that he could not obtain the senior Kornberg's signature, although he had also been asked to sign.

Copies of the contracts and Guaranty were all sent back by Mr. Moses to Mr. Reynolds.

Upon the record so made the court concluded that the "purported Guaranty does not constitute an enforceable contract of guaranty between the Plaintiff and the Defendants Howard R. Kornberg and Grant Reynolds." The reason given for this conclusion was that appel-

lant had not requested appellees to execute the Guaranty; that they had not signed in their individual capacities and that there was no consideration for their execution of the Guaranty.

■ We are of the opinion that there was error in the rulings of the trial court in reference to the validity of the Guaranty contract. Here the Guaranty was made at the request of appellant. The execution and the return thereof to appellant completed the contract. It was attached to the Factoring Agreement and was a part of the transaction participated in by all the parties. When the Factoring Agreement was accepted and acted upon by appellant the obligation was complete. It required no other notice of acceptance. The authorities are numerous on this point. See Davis v. Wells, 104 U.S. 159, 166, et seq., 26 L.Ed. 686; Doud v. National Park Bank of New York, 5 Cir., 54 F. 846; United States Fidelity and Guaranty Company v. Riefler, 239 U.S. 17, 36 S.Ct. 12, 60 L.Ed. 121; Mamerow v. National Lead Co., 206 Ill. 626, 69 N.E. 504; Frost v. Standard Metal Co., 215 Ill. 240, 74 N.E. 139; Dayton Rubber Mfg. Co. of Delaware v. Sabra, 9 Cir., 31 F.2d 9; Bankers & Shippers Ins. Co. of New York v. Murdock, 8 Cir., 72 F.2d 292; James Talcott, Inc., v. Fullerton Cotton Mills, Inc., 5 Cir., 208 F.2d 81, 83.

■■ As said by Judge Russell, specially concurring in the last cited case: "The vice in the judgment of the trial court stems from the failure of the court in its findings to give effect to the rule of law that a party signing an otherwise enforceable agreement will not generally be heard to assert that such agreement was not intended to have any legally binding effect. Contracts can not thus be avoided."

That statement is particularly applicable here. As construed by the trial court and contended by appellees, the Guaranty contract meant nothing. It added nothing to the obligation of the Factoring Agreement to which it was attached, for, as so construed, the defendant corporation alone was liable for the good faith performance of the Factoring Agreement. The Guaranty attached to it and signed by appellees was a mere formality.

That the record at the close of plaintiff's case disclosed a breach of the Factoring Agreement and the corresponding liability of the defendants is clear. The assignment of the account of the Tupelo Farm Equipment Company by defendants to plaintiff is in evidence signed by defendant Dakota Steel Products Co., "By Grant Reynolds." It reads in part: "The signer hereof, hereby certifies, for the purpose of inducing you to purchase these accounts, that the debtors listed below, are indebted to the undersigned, in the amounts set opposite their respective names, for merchandise * * * sold * * * and that said sales * * * are strictly in accordance with orders received from the said debtors * * *.'"

Below this preamble is listed two items of account of "Tupelo Farm Equip. Co., Tupelo, Miss., $38,570.00; 1365.00."

This document is dated June 9, 1951.

The undisputed evidence shows that at the time this document was signed no merchandise had been sold to the Tupelo Farm Equipment Company. The merchandise referred to had been consigned only and defendants had retained title to all of it. The Tupelo Company was not indebted to defendant Dakota Steel Products Company in the amount recited in the assignment. It became indebted only in case it sold any of the merchandise consigned, and it was able to sell but a very small amount thereof. The obligation of defendant corporation is not disputed. It follows, therefore, that the obligation of the guarantors upon this record is complete and that the defenses pleaded are without merit.

For all these reasons the judgments appealed from are reversed and the cases are remanded to the district court with instructions to grant a new trial.

Reversed.