Margaret SOPP, Plaintiff,

v.

Arthur E. GEHRLEIN, Chester J. Miller, Herman Nowak, Donald W. Gunter, Michael J. Kinecki, Defendants.

Civ. A. No. 1044.

United States District Court
W. D. Pennsylvania.

June 10, 1964.

George Schroeck, Harrisburg, Pa., for plaintiff.

Chase, Hanes, Bifulco & Mangan, Erie, Pa., for Gehrlein, Miller, Nowak and Gunter.

Agresti & Agresti, Erie, Pa., for Kinecki.

Wm. E. Pfadt, Erie, Pa., for 4 above defendants.

Lawrence R. Nelson, Erie, Pa., for Kinecki.

WILLSON, District Judge.

In this civil action plaintiff Margaret Sopp invokes the jurisdiction of the Court under 42 U.S.C.A. § 1983. The plaintiff charges the five named defendants with violation of her civil rights as protected in the statute cited in that they under color of law in their official capacities as officials of the City of Erie deprived plaintiff of her civil liberties and immunities guaranteed under the Fourteenth Amendment. The complaint is unnumbered, but divided into two parts under I and II. At the conclusion of I, it is averred as follows:

"Chester J. Miller was acting chief of police and while acting under color of law ordered and directed the arrest, detention, and physical and mental abuse of the plaintiff.

"Herman Nowak was a sergeant of the City of Erie police force, and while acting under color of law, filed the false and fraudulent information against the plaintiff, arrested her at her place of employment, communicated the slanderous and libelous charges to Plaintiff's employer and fellow workers, forcibly and publicly removed her from her place of employment forcibly confined and de-

tained her in the City of Erie jail incommunicado, and further abused her while so confined.

"Donald W. Gunter was a police officer of the City of Erie police force, and, while acting under color of law, fingerprinted and photographed Plaintiff and slandered and abused her while so doing.

"Michael J. Kinecki was the police magistrate of the City of Erie, and, while acting under color of law, without probable cause, falsely and maliciously issued the warrant for Plaintiff's arrest, mistreated and abused her when she was brought before him, and falsely and needlessly imprisoned her.

"Arthur E. Gehrlein was acting as the official handwriting expert for the City of Erie police force, and, while acting under color of law, falsely accused Plaintiff of the crime charged against her and issued libelous statements concerning her alleged guilt."

Plaintiff is a mature woman and alleges that she has been happily married for many years. She is of the white race.

On page three of the complaint under part II plaintiff recites her damages and again avers that the defendants acting in concert without just or probable cause or provocation, and under color of their authority as such law enforcement officials caused plaintiff to be slandered and among other things to be arrested, fingerprinted, and to be falsely and fraudulently accused of the most degrading sexual crime, i. e. solicitation to commit sodomy, and finally, in subheading (e) to have said charges communicated to her employer and her fellow workers causing her to lose her job, and under (f) it is said that the charges have been spread on the arrest dockets of the City of Erie and the Erie County Prison.

Defendant Michael J. Kinecki has filed a timely motion to dismiss the complaint. He also joins the other defendants in a Motion for Summary Judgment under Rule 56(b) and (c) of the Rules of Civil Procedure. Depositions in support of the motions have been filed, as well as an affidavit from each defendant. Mrs. Sopp's counteraffidavit attached to her counsel's brief also has been duly considered. Counsel have been heard orally on the motions. At the argument it was conceded as appears in the complaint that there is no diversity of citizenship, and that this complaint must stand or fall on the allegations invoked as coming within the purview of the Civil Rights Act. On behalf of the police magistrate Michael J. Kinecki, who issued the warrant on which plaintiff was arrested, counsel contend that there are allegations of fact in the complaint which would justify the conclusion that the defendant Kinecki acted without probable cause. He is charged with falsely and maliciously issuing the warrant for plaintiff's arrest, and with mistreating and abusing the plaintiff, yet there is nothing pleaded except conclusions, says counsel; and this Court agrees. As to the other defendants, counsel says the affidavits and depositions also indicate that there is no genuine issue as to any material fact in this case. It is to be observed first that the allegations are not precise with respect to factual averments. An inspection of the complaint shows that it is averred that Chester J. Miller, the Chief of Police, ordered and directed the arrest, detention, and physical and mental abuse of the plaintiff, but there is no allegation as to exactly what he did in the way of physical or mental abuse, or in what respect he acted under color of law. The same can be said as to the remaining allegations in the complaint relating to the other officers. It is charged for instance that Arthur E. Gehrlein, who was acting as the official handwriting expert for the City of Erie police force, and while acting under color of law, falsely accused plaintiff of the crime charged against her and issued libelous statements concerning her alleged guilt without particularly indicating exactly what Gehrlein did with respect to causing plaintiff's arrest.

A careful reading of the affidavits submitted and of the depositions and especially of the depositions of Frederick R. Filburn and Harlan J. Litteral, who were Postal Inspectors, and Richard V. Scarpitti, the Assistant District Attorney and afterwards the District Attorney of Erie County, indicates that the investigation was commenced on the complaint of plaintiff herself. It was undertaken by the city officials in conjunction with the Postal Inspectors. Two city detectives were assigned to investigate the case. The affidavit of the defendant Herman Nowak indicates that he was assigned in the regular course of duty to investigate receipt of obscene letters by one Nancy Wilson. He communicated with Postal Inspector Filburn, who requested assistance in making a complete investigation of the case. Filburn had been working on the case and had gathered some evidence. Handwriting samples reported to be those of Margaret Sopp were taken to Mr. Gehrlein for the purpose of identification. Mr. Gehrlein advised the detectives that the letters addressed to Nancy Wilson and signed "Maggie Sopp" were written by the same person, Margaret Sopp, who had given a sample of her handwriting to Postal Inspector Filburn. Mr. Gehrlein said he would testify to that in Court.

The detectives were then taken to see the District Attorney, Mr. Scarpitti. They outlined the evidence for him and asked for his opinion. According to the affidavits and depositions of Mr. Scarpitti, he examined the law on the subject and indicated to the detectives that he had a prima facie case and directed that they proceed to serve a warrant whereupon the detectives went to Alderman Kinecki's office and swore to the information charging Margaret Sopp with the offense as suggested by the District Attorney. Defendant Nowak's affidavit said he swore to the information for the reason that he believed the charges to be true at the time he was acting upon orders of the District Attorney of Erie County and those of his superior officers. And other affidavits and depositions indicate that in this case a routine criminal investigation was undertaken with the credible evidence pointing to the guilt of the plaintiff. As Mr. Scarpitti, the District Attorney, stated in his deposition:

" * * * I advised that there was probable cause and that there was a prima facie case, which there is with a corpus delicti, plus an expert."

As it turned out, Postal Inspector Litteral solved the crime, and a most bizarre set of circumstances were revealed which exonerated plaintiff. An individual named Anthony DiBacco confessed that he had written and sent letters addressed to both women suggesting the offense. He replied in turn to each letter he mailed. He was familiar with Margaret Sopp's handwriting and at least traced or duplicated her handwriting in letters supposedly written and mailed by her to Nancy Wilson.

■■ It has been noticed also that Nancy Wilson and her parents had complained to the police and District Attorney some months prior to the arrest of Mrs. Sopp, as had Mrs. Sopp. The officials were puzzled for a number of months with respect to the apparent similarity in the writing of the letters and Mrs. Sopp's admitted handwriting. It is established by the affidavits and depositions that a careful investigation was instigated and carried through. The arrest was made, according to Mrs. Sopp, a short time after 4:00 p. m. She claimed she was taken to the police station at about 4:30 p. m. and underwent questioning for some four hours and then was placed in a cell for two hours. She avers in her affidavit that around 10:15 p. m. she was fingerprinted and photographed. At about 10:30 p. m. Mrs. Sopp was taken to Alderman Kinecki's office for arraignment. On arraignment she pleaded not guilty and was recommitted to jail for want of bail. However, it appears at midnight her husband, Thomas Sopp, went to the Alderman's dwelling house where he received a bond form,

signed it, and Mrs. Sopp was released at least by about 1:30 a. m. The amount of the bail is not indicated in any of the depositions or affidavits, and there is no claim in this case that it was excessive. It appears, however, that Mrs. Sopp was not permitted to use the telephone until at least 10:30 p. m. at which time she called her sister in an attempt to arrange for bail. Plaintiff in this case strongly contends that her arrest followed by incarceration and interrogation from 4:30 p. m. until 10:30 p. m. is a violation of her civil rights. Defendants cite Watson v. United States, 101 U.S.App.D.C. 350, 249 F.2d 106, for the principle that an arrested person must be arraigned before a judicial officer as quickly as possible. This case, of course, is authority for that proposition in criminal prosecutions. Failure to promptly arraign very often is the basis for a discharge. But considering the time element involved in the instant case, I do not consider that the time lapse between her arrest at approximately 4:30 p. m. and the arraignment at about 10:30 p. m. was per se a violation of her civil rights. It must be borne in mind that there are no factual averments other than the mere time lapse as showing any such alleged violation of plaintiff's rights.

■ Under the rule defendants are entitled to summary judgment forthwith if the pleadings, depositions, and affidavits, if any, show that there is no genuine issue as to any material fact. Plaintiff has cited a number of cases, among them, Yates v. Village of Hoffman Estates, Illinois, D.C., 209 F.Supp. 757 (1962); Roberts v. Trapnell, D.C., 213 F.Supp. 49 (1962); Wakat v. Harlib, 7 Cir., 253 F.2d 59 (1958), and other cases as supporting the averments in the complaint. I have read those decisions and other decisions, notably, Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Mueller v. Power, 8 Cir., 203 F.2d 797 (1953); Geach v. Moynahan, 7 Cir., 207 F.2d 714 (1953); and Hornsby v. Allen, 5 Cir., 326 F.2d 605 (1964). It should be observed that in reading decisions with respect to so-called civil rights cases the facts in each case are usually unique. Many persons are arrested without warrants. It is a plain abuse of authority imposed on the officers. I do not find the factual situation in the instant case anywise comparable to those decisions which support civil rights cases.

■ It seems to this Court to be beyond dispute but that these defendants acted in strict accordance with the requirements of the law in investigation and in causing the warrant to issue and the arrest of the plaintiff and her detention under bail. Defendant Nowak has signed the information and tells why he signed it and the basis on which he made the affidavit. The then Assistant District Attorney advised the prosecution after conferring at least twice with the detectives of the plaintiff's rights. In the complaint there are no averments of fact which would warrant any conclusion but that Mrs. Sopp was treated while under arrest and in the hands of the officers with the same consideration as is given any other person arrested. There is nothing in the affidavits and depositions to show that any of the defendants abused their authority under color of law. There was no concerted action on their part to disregard the plain requirements of any law. It is apparent from the affidavits that each was concerned over the seriousness of the offense with which the plaintiff was to be charged and acted guardedly by and after consultation with each other, and their actions were guided by what they considered to be credible evidence. Of course, the prosecution was ill-founded but that is hindsight so far as the instant case is concerned. The defendants made a judgment based upon facts and information which they possessed and which at the time appeared credible. Examining this situation from the point of view of the law as the writer of this opinion understands it, the defendants could not have done otherwise considering the circumstances confronting them, and as the prosecution against plaintiff turned out

ill-founded, it seems to this Court that this civil action is equally ill-founded and is not supported by federal law. The respective Motion for Summary Judgment and Motion to Dismiss are granted.