OPINION OF THE COURT
GARTH, Circuit Judge.
This appeal involves various civil rights claims and pendent state law claims arising out of the arrest, custody and subsequent suicide of Annette Patzig. The district court granted the defendants’ motion for a directed verdict at the end of the plaintiffs’ case. We affirm as to all defendants except the City of Philadelphia. As to the City, we reverse, limiting our reversal solely to the Patzigs’ false arrest claims.
I.
On February 21, 1975, the decedent Annette Patzig, accompanied by two friends (Christine Conan and Cynthia Slough), visited a private night club in Philadelphia, arriving at 11:30 p. m. Patzig, according to Conan’s testimony, had two drinks. Conan drank heavily and became intoxicated.
Patzig’s other friend, Slough, was injured during the course of the evening and was rushed to a hospital. Patzig and Conan, upon learning this fact, left the club in Patzig’s automobile in search of Slough. Patzig was driving the car. At trial, Conan testified that the decedent was sober at the time she left the club, and was able to drive.
Since the two girls did not know to which hospital Slough had been taken, they drove to several center city hospitals. At each one Patzig went into the emergency room to inquire about Slough. Again, according to Conan, Patzig was able to walk and talk normally. It should be noted, however, that during this time, Conan remained in *845 the back seat of the car, lapsing in and out of consciousness.
At 4:30 a. m. Patzig, while driving the wrong way on a one-way street, was arrested by Officer McMullen of the Philadelphia Police Department on a charge of drunken driving. Conan testified that Patzig did not appear intoxicated at the time of her arrest. Patzig and Conan were taken to the local police station, and later, at 5:55 a. m., were transported to the Police Administration Building. At 6:07 a. m. Patzig was given a breathalyzer test, the results of which were not conclusive. The test showed a blood alcohol level of C.06%.[1] A police surgeon administered a medical examination shortly thereafter (at 6:15 a. m.), and found that Patzig was sober and able to operate a motor vehicle as of the time of the examination. There was other testimony that Patzig did not appear to be intoxicated while in police custody.
Patzig was nevertheless detained in a cell with two other women[2] pending arraignment before a magistrate. The cell had only one metal rack which could be used as a bed or bench. Since her two cellmates were using the rack, Patzig was required to sleep on the tile floor.
During the early part of her confinement, decedent manifested disturbance at her arrest, but exhibited no unusual behavior. During several cell checks[3] by police matrons she was seen either standing or sleeping on the floor. Sometime between 9:00 a. m. and 9:40 a. m. (there is conflicting evidence as to this), Patzig was allowed to make a telephone call. After her call, she refused to return to her original cell. Pat-zig was then taken by a matron and a police officer to a cell near the end of the cell corridor. The cell to which she was taken was situated between vacant cells. Patzig was the sole occupant in this cell. There was testimony that she was isolated in this manner because she was creating a disturbance.
Patzig then began to act hysterically, shouting, flushing the toilet, and banging the bars of the cell. A police matron attempted to quiet her, failed, and left her alone. Patzig continued to act in this manner for approximately thirty minutes. She then became quiet. At 10:00 a. m. a matron found Patzig hanging by her belt.[4] She was later pronounced dead.
The autopsy revealed a blood alcohol level of 0.0% at the time of death. Extrapolating from this datum and the result of the breathalyzer, a medical expert concluded that Patzig’s blood alcohol level at the time of arrest was 0.085% to 0.09%. The autopsy also indicated the presence of barbiturates in her blood. There was testimony that the decedent was in the habit of taking large doses of barbiturates, which can cause the same clinical symptoms as alcohol intoxication.
II.
Patzig’s parents instituted the present lawsuit, alleging violations of the Civil Rights Act, as well as pendent state law claims. The defendants included the Philadelphia Police Commissioner, as well as various police supervisors, police officers and police matrons (some of whom were identified by name and others of whom were listed as “John Doe’s”). Additionally, the plaintiffs joined the City of Philadelphia, alleging jurisdiction under 28 U.S.C. § 1331 and asserting an implied cause of action under the fourteenth amendment.
The constitutional violations alleged by the plaintiffs can be distilled into three essential claims:
first, that Patzig was arrested without probable cause in violation of her right against unreasonable search and seizure;
*846 second, that the delay in taking Patzig before a magistrate abridged due process;
third, that the treatment Patzig received while in custody constituted cruel and unusual punishment.
In addition, the plaintiffs requested that the district court entertain various state law claims pursuant to its pendent jurisdiction. From the prolix and rather inartfully drawn complaint, we can glean claims sounding in negligence, as well as a claim for false arrest under state law.[5]
After the plaintiffs had presented their evidence, the district court granted the defendants’ motion for a directed verdict under Fed.R.Civ.P. 50(a), and entered judgment against the plaintiffs. This appeal followed.
III.
This Circuit has expressed the standard for a directed verdict as follows:
Because this is an appeal from a directed verdict for the defendant, we must examine the record in a light most favorable to the plaintiff, and review the specific evidence in the record and all inferences reasonably capable of being drawn therefrom. We must determine whether, as a matter of law, the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief. Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); Lebrecht v. Bethlehem Steel Corp., 402 F.2d 585 (2 Cir. 1968); Schad v. Twentieth Century-Fox Film Corp., 136 F.2d 991 (3 Cir. 1943); Rawleigh, Moses & Co. v. Kornberg, 210 F.2d 176 (8 Cir. 1954). Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir. 1969). “[I]f the evidence is of such character that reasonable men, in the impartial exercise of their judgment may reach different conclusions, the case should be submitted to the jury.” Silverii v. Kramer, 314 F.2d 407, 409 (3d Cir. 1963). See Rogers v. Exxon Research & Engineering Co., 404 F.Supp. 324, 335-36 (D.N.J.1975). Since a directed verdict motion deprives a party of jury fact-determination, it should be granted sparingly and circumspectly. “Nevertheless the federal courts do not follow the rule that a scintilla of evidence is enough. The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party.” 9 Wright & Miller, Federal Practice and Procedure, § 2524, at 542-43 (1971) [footnotes omitted]. Measuring the district court’s disposition against this standard we turn now to an examination of the plaintiffs’ claims.
IV.
The plaintiffs’ second (due process) and third (cruel and unusual punishment) constitutional claims are clearly without merit. The district court did not err by directing a verdict as to these claims. Denneny v. Sie-gel, supra.
A.
An arrest for drunken driving at 4:30 a. m. on a Saturday, followed by confinement for five hours pending arraignment before a magistrate does not, without more, constitute a deprivation of due process rights. See Daly v. Pedersen, 278 *847 F.Supp. 88 (D.Minn.1967); Sopp v. Gehrlein, 232 F.Supp. 881 (W.D.Pa.1964). In Daly, a § 1983 action based in part on defendant police officers’ alleged failure promptly to present plaintiff to a magistrate for arraignment, the plaintiff was arrested and held in custody for four and one-half hours prior to his release. The court granted summary judgment in the defendants’ favor, holding that an “arraignment within four to four and a half hours within arrest was reasonably prompt.” 278 F.Supp. at 94. The court stated that “[mjany times arraignments are not until the next morning and are nonetheless held sufficiently prompt.” Id. at 95. Similarly, in Sopp the court — faced with a § 1983 claim based on a delay between arrest and arraignment from 4:30 p. m. to 10:30 p. m., during which time the defendants held plaintiff in custody and allegedly interrogated her — granted summary judgment in the defendants’ favor, stating that it did “not consider that the time lapse between [plaintiff’s] arrest at approximately 4:30 p. m. and the arraignment at about 10:30 p. m. was per se a violation of her civil rights.” 232 F.Supp. at 884.[6]
We note in this regard that a breathalyzer test was administered during this time, the result of which was a finding of a 0.06% blood alcohol level. While that result would not raise a presumption of intoxication under Pennsylvania law, it would be enough to allow a jury in a trial on drunken driving charges to find that Patzig had been intoxicated while driving. See 75 Pa.Con.Stat.Ann. § 1547 (Purdon 1977).[7] Given this positive breathalyzer test, it was not unreasonable for the Philadelphia police to hold Patzig for arraignment. Moreover, during the period after her arrest, the police were processing her, and were administering tests, the results of which might have been exculpatory. Given the time of arrest and the necessity for “processing” and testing Patzig, there was no unnecessary delay in bringing her before a magistrate. See Adams v. United States, 130 U.S.App.D.C. 203, 208, 399 F.2d 574, 579 (1968) (Burger, J., concurring). Cf. King v. Fitzharris, 311 F.Supp. 400 (C.D.Cal.1970) (court held a 24 day delay between arrest and arraignment was not a denial of due process when the delay was due to hospitalization and treatment for wounds sustained prior to arrest). We therefore cannot say that the district court erred in directing a verdict in favor of the defendants, for we too agree that, on this record, “reasonable men, in the impartial exercise of their judgment” could not reach different conclusions with respect to plaintiffs’ due process claim.
Thus, the district court was correct under the Denneny standard in directing a verdict as to the plaintiff’s due process theory of liability based on the length of Patzig’s pre-arraignment confinement and the charged delay in bringing her before a magistrate.
B.
Insofar as plaintiffs allege that Patzig was subjected to “cruel and unusual punishment”, we note that “[i]t is questionable whether the Eighth Amendment’s prohibition ... is applicable to a pretrial detainee, the most accepted view being that the amendment’s proscription applies only after conviction.” Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1079 (3d Cir. 1976). The due process clause, however, will protect pretrial detainees from abusive treatment. Id. at 1080. Decisions applying the cruel and unusual punishment clause nonetheless serve as “useful analogies”. Id.
In order to establish a constitutional violation under the eighth amendment, it is necessary that there be a deliberate indifference to the prisoner’s needs. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Hampton v. Holmesburg Prison Officials, supra at 1081. *848 A reading of the evidence before the district court reveals that police personnel may have acted negligently, perhaps even callously; but such actions do not amount to the “intentional conduct characterizing a constitutional infringement.” Id. at 1078. “More is needed than a naked averment that a tort was committed under color of state law . . . .” Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970). On the record before us, we find that no such intentional conduct was shown. Consequently, the district court did not err in entering a directed verdict in defendants’ favor with respect to the “cruel and unusual punishment” claim. Denneny v. Siegel, supra.
V.
In light of our disposition of the plaintiffs’ due process and eighth amendment claims discussed above, it is clear that whether or not plaintiffs have any constitutional claim at all must stand or fall on whether the arresting police officer had probable cause to arrest Patzig. Clearly, an arrest without probable cause is a constitutional violation actionable under § 1983. See, e. g., Sartin v. Commissioner of Public Safety, 535 F.2d 430 (8th Cir. 1976); Street v. Surdyka, 492 F.2d 368 (4th Cir. 1974). The question before us now, however, is whether the issue of probable cause, or the lack thereof, should have been allowed to go to the jury.
A.
We are convinced that the question of probable cause in a § 1983 damage suit is one for the jury. In Street v. Surdyka, supra, the probable cause question was submitted to the jury; neither the court nor any party challenged that procedure.
It is true that a magistrate or judge makes probable cause determinations in the criminal context. But that fact is not dis-positive here. In a civil case, whether an issue must be submitted to a jury depends on an historical analysis of whether it would have been cognizable at law or in equity. See 9 Wright & Miller, Federal Practice & Procedure § 2302. “If a new cause of action is created by Congress [such as § 1983], and nothing is said about the mode of trial, the courts must look to the nearest historical analogy to decide whether there is a right to a jury.” Id.
In the ease at bar, the closest historical analogy is, of course, an action at common law for false arrest or false imprisonment. See Prosser on Torts § 12, at 54 (3d ed. 1964). Such a tort action is a “lineal descendent of the old action of trespass.” Id. As such, it is clear that a “constitutional tort” action grounded in false arrest comes within the seventh amendment’s proscription. The question of whether a police officer’s warrantless arrest was without probable cause is the key issue in such a case. We would conclude, therefore, that it is a question for the jury. Cf. Curtis v. Loether, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (suit in damages for discrimination in housing is sufficiently analogous to a suit at common law to be appropriately characterized as a legal claim triable to a jury).
We are reinforced in this conclusion by Supreme Court decisions recognizing a “strong federal policy favoring trial by jury of issues of fact.” 9 Wright & Miller, supra, § 2302 at 17. See Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959).
B.
The question to be decided is therefore whether a reasonable jury, on the evidence adduced by the plaintiffs and drawing all inferences in the plaintiffs’ favor, could have reasonably found that the arresting officer did not have probable cause to arrest Patzig. Denneny v. Siegel, supra.
We believe that the evidence of lack of probable cause was sufficient to allow the issue to go to the jury. It is true that there was a good deal of circumstantial evidence which would support a finding of *849 probable cause: Patzig was arrested after driving the wrong way down a one-way street. She had been at a bar for several hours and admitted having two drinks. At 6:07 a. m. a breathalyzer test showed a 0.06% blood alcohol level, and medical testimony, consisting of extrapolation from that finding and a 10 a. m. finding of 0% alcohol level, established that her blood alcohol level at the time of arrest was 0.085-0.09%. At death Patzig had amounts of amobarbi-tol and secobarbitol in her blood, although there was not enough data to extrapolate to a blood barbiturate level at the time of arrest. Barbiturates display the same clinical symptoms as alcohol intoxication. Alcohol and barbiturates in Patzig’s blood do not, of course, prove that she appeared intoxicated when arrested. But it is circumstantial evidence of whether the arresting officer reasonably believed her to be intoxicated, in that it shows she had been drinking and may have appeared drunk.
On the other hand, there was testimony that Patzig had a history of ingesting tui-nal, a drug containing the two barbiturates found in her blood, and had a high tolerance for these drugs. At 6:15 a. m. a medical exam revealed no clinical signs of intoxication. Moreover, various jail personnel testified that Patzig appeared sober during the entire time she was in custody. Most importantly, the only direct evidence of Pat-zig’s condition at the time of her arrest— the testimony of Christine Conan — strongly supported a lack of probable cause. Conan testified that Patzig displayed no signs of intoxication when her car was stopped, and that Patzig had had only two drinks that night. We recognize that Conan was Pat-zig’s friend, and that Conan by her own admission was in the back seat and was drunk. Nevertheless the weight of Conan’s testimony is for a jury, not a court, to decide.
In sum, we believe that the evidence, taken in the light most favorable to the plaintiffs, would sufficiently support the inference that Patzig did not appear intoxicated when arrested.[8] Moreover, the arresting officer not having been called to testify, the court did not have the benefit of his direct or cross examination. Yet, obviously, he was the most important witness with respect to the question of probable cause. We conclude, therefore, that the district court erred by directing a verdict on the false arrest claim at the end of the plaintiffs’ case.[9]
*850 C.
However, Officer McMullen, the arresting officer — who is the only party suable under § 1983 for the constitutional false arrest claim — was never served (although he was joined by an amendment to the complaint). He may not, therefore, be held liable for the false arrest in this proceeding.
Plaintiffs contend, however, that the City may be held liable, not under § 1983 (see Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473; 5 L.Ed.2d 492 (1961)), but directly under the fourteenth amendment, arguing that an implied cause of action is available under general federal question jurisdiction, 28 U.S.C. § 1331. The district court, in a pre-trial ruling which refused to dismiss the complaint against the City, held that such an implied cause of action existed, apparently relying on Skehan v. Board of Trustees of Bloomsburg State College, 501 F.2d 31 (3d Cir. 1974), vacated and remanded on other grounds, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), on remand, 538 F.2d 53 (3d Cir.) (en banc), cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). Dist.Ct.Mem.Op. of July 30, 1976. We, however, do not reach the fourteenth amendment question here. We would like to emphasize in this respect that this Circuit has not yet decided that issue. Skehan holds only that federal courts have jurisdiction under 28 U.S.C. § 1331 to hear constitutional claims against entities (such as municipalities) which are not “persons” for the purposes of 42 U.S.C. § 1983. Skehan does not hold and is therefore not authority for the proposition that money damages may be recovered from such an entity on a cause of action implied directly under the fourteenth amendment. See e. g. Gagliardi v. Flint, 564 F.2d 112, 115 n.3 (3 Cir. 1977), cert. denied, - U.S. -, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). This issue of whether there exists a direct fourteenth amendment cause of action (as distinct from its jurisdictional predicate) against a municipality for tort damages has yet to be resolved in this Circuit, and has been expressly left open and reserved for future determination. Id.; Mahone v. Waddle, 564 F.2d 1018, 1023-24 (3d Cir. 1977), cert. denied,-U.S.-, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978).
In Gagliardi v. Flint, supra, we held that a fourteenth amendment claim against a municipality was a federal question of sufficient substance to support § 1331 jurisdiction over that municipality, even though the question of whether such a cause of action exists had not yet been decided. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). We further held that the district court in such a situation had the discretionary power to decide pendent state law claims against the municipality prior to addressing any constitutional claim. See Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Siler v. Louisville & Nashville Railroad, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).
In the case sub judice the district court, which correctly decided that the City was subject to its jurisdiction under § 1331, was faced with several state law claims against the City, as well as the constitutional claims. Under Gagliardi the court had the discretion to entertain those state claims. Yet the district court, as far as we can tell from the record, never addressed the pendent claims [10] — i. e. it never
*851 exercised its discretion under Gagliardi. Accordingly, we must remand to the district court in order that it may consider the exercise of pendent jurisdiction with regard to the state law claims before deciding the federal constitutional issue. This result is dictated by Pitrone v. Mercadante, 572 F.2d 98 (3d Cir. 1978) and Mahone v. Waddle, supra, 564 F.2d at 1025-26.[11] We do not, and cannot of course, affirmatively order the district court to exercise its pendent jurisdiction. See Mahone v. Waddle, supra, 564 F.2d at 1026. We note, however, that the decisions of both this court and the Supreme Court with respect to pendent claims “speak in terms of the course a court ‘usually should’ take.” Mahone v. Waddle, supra, 564 F.2d at 1026, quoting Gagliardi v. Flint, supra, 564 F.2d at 114. See Hagans v. Lavine, supra; Siler v. Louisville & Nashville Railroads, supra; Gagliardi v. Flint, supra. See also UMW v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
VI.
The judgment of the district court will be affirmed insofar as it grants a directed verdict in favor of the defendants as to the due process and “cruel and unusual punishment” claims. The judgment will be reversed insofar as it directs a verdict in favor of the City on the false arrest claim. The case will be remanded so that the district court may exercise its discretion to entertain the pendent state law claims against the City,[12] and for further proceedings consistent with this opinion.

. Under Pennsylvania law, a blood alcohol level of 0.10% raises a presumption of intoxication. A level of 0.05% to 0.10% allows a jury to find intoxication. 75 Pa.Con.Stat.Ann. § 1547 (Pur-don 1977).

. Police regulations called for two women per cell, if possible.

. Cell checks were required every 15 minutes by the regulations. The matrons made checks every 30 minutes, however.

. The belt had never been taken from her, in violation of police regulations.

. The complaint alleged:
24. The defendants [which include the City] have breached various duties owed plaintiffs’ decedent . . . which constituted negligence, recklessness, willful, wanton and malicious misconduct, including but not limited to:
e. Malicious prosecution;
f. Maintaining custody and imprisonment over the plaintiffs’ decedent with actual and constructive notice that the accusation of commission of crime which formed the basis for the arrest, had no substantiation in fact or law;
h. Violation of the plaintiffs’ decedent’s rights to freedom from illegal seizure of her person and effects;
i. Violation of plaintiffs’ decedent’s rights to freedom from unlawful arrest;
j. Violation of plaintiffs’ decedent’s rights to freedom from illegal detention and imprisonment.

. See also Mueller v. Powell, 203 F.2d 797 (8th Cir. 1953); Burdick v. Allgood, 270 F.Supp. 614 (E.D.La.1967), aff’d, 402 F.2d 480 (5th Cir. 1968) (per curiam); Price v. Allgood, 249 F.Supp. 418 (E.D.La.), aff’d, 369 F.2d 376 (5th Cir. 1966) (per curiam), cert. denied, 386 U.S. 998, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967).

. See note 1 supra.

. The district court in its opinion accompanying the order directing the verdict, stated that a “distinct odor of alcohol” emanated from Pat-zig’s car. We can find no direct support for this finding in the record, and can only surmise that the court inferred this from the undisputed facts that Conan was drunk and Patzig had been drinking. The jury is just as competent to make — or not to make — such an inference. Thus the court could not use such an inference (which hardly seems to be based on an examination of the evidence in the light most favorable to the plaintiff) in order to direct a verdict. We note that a statement by the arresting officer that Patzig had a strong odor of alcohol on her breath, slurred speech, a swayed sense of balance, and exhibited sleepy conduct, appeared in the Homicide Report (Exhibits P-22, P-23, P-43). These exhibits, however, were never admitted into evidence, and were therefore not properly before the district court when it directed the entry of a verdict for the defendants, nor are they part of the record before this court.

. Our conclusion is buttressed by the fact that the burden of proof as to the existence of probable cause may well fall upon the defendant, once the plaintiff has shown an arrest and confinement without warrant. At common law, the rule was that once a plaintiff showed arrest and imprisonment without process, the burden shifted to the defendant to show justification, such as probable cause. See Rest.2d, Torts § 10 (1965); Prosser on Torts, § 26, at 132 (4th ed. 1971). In Dellums v. Powell, No. 75-1975 (D.C. Cir., August 4, 1977), the court held that in a constitutional tort claim for false arrest, an allegation of arrest and imprisonment without warrant shifts to the defendant the burden of justifying the arrest. Slip Op. at 7-9. See Martin v. Duffie, 463 F.2d 464 (10th Cir. 1972); Sexton v. Gibbs, 327 F.Supp. 134 (N.D.Tex.1970). Cf. Manuel v. United States, 355 F.2d 344, 346 (5th Cir. 1966) (burden of persuasion on prosecution to establish probable cause for an arrest once it is shown arrest was made without warrant). In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966), the Supreme Court spoke of good faith and probable cause as defenses to a § 1983 action for unconstitutional arrest. The Court in Pierson noted that the details of constitutional torts should be shaped by reference to the parallel common law tort. Thus argu *850 ably the same pleading and proof rules apply to constitutional false arrest claims as common law false arrest claims. Dellums v. Powell, supra, slip op. at 8.

. The district court did state, in its oral opinion on the directed verdict motion, that:
I believe there is a saving action filed in the State Courts to deal with the negligence aspect of the various parts of the defendants herein named or other persons unnamed in this matter before us.
Appendix at 228. It is possible to construe this rather ambiguous remark as an exercise of discretion with respect to the negligence claims. It can in no way be interpreted, however, as an exercise of discretion as to the state law false arrest claim. For all we know, the district court may have intended, had it believed that the plaintiff presented sufficient evidence to go to the jury, to instruct the jury on the elements of the state tort of false arrest, as well as the constitutional claim.
The district court on remand is in the best position to determine whether or not the language quoted above constituted an exercise of discretion as to the negligence claims, and if it *851 did not, whether its discretion dictates that it decide those claims.

. In Pitrone, plaintiff brought an action against a municipality, alleging he was unconstitutionally arrested, detained and beaten by police. He also alleged pendent state law claims based on the same police conduct. The district court held that no cause of action for money damages could be implied from the fourteenth amendment, and refused to hear the pendent claims, believing that Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), precluded the exercise of pendent jurisdiction. We vacated the district court judgment and remanded so that the district court would have an opportunity to “exercise its discretion to hear the pendent state claims before deciding the federal constitutional issue.” 572 F.2d at 100. We held that since, under Gagli-ardi, the assertion of the fourteenth amendment cause of action was enough to vest the court with jurisdiction over the municipality, Aldinger did not bar the exercise of pendent jurisdiction.
In Mahone, we affirmed the district court’s dismissal of a fourteenth amendment claim in part because of the presence of state law claims. We then remanded so that the district court could exercise its discretion under Ga-gliardi. 564 F.2d at 1025-26.
In both Pitrone and Mahone the relief available under state law was co-extensive with that sought under the fourteenth amendment. In this case as well the relief is co-extensive— both as to elements of proof and elements of damages — since the plaintiffs alleged a state law false arrest claim as well as a constitutional false arrest claim. (The elements of each are for the most part the same. Both would support punitive damages.)
In Mahone we recognized that “a case may arise in which a plaintiff claims the relief available under state law is not co-extensive with the relief available under the fourteenth amendment.” 564 F.2d at 1026. This is not such a case either. Had the plaintiff not asserted the state false arrest claim, however, we would have been faced with a very different case, a case in which the relief sought under state law (negligence) would not have been co-extensive with the relief sought under the fourteenth amendment (unconstitutional arrest), either as to elements of proof or elements of damages. In such a situation we may well be required to reach the fourteenth amendment question. See Mahone v. Waddle, supra, 564 F.2d at 1052-56 (Garth, J., dissenting). We do not decide that question here, however.

. We would note that since the federal claims against the individual defendants (none of whom can be liable on the false arrest claim, see Fisher v. Volz, 496 F.2d 333 (3d Cir. 1974)) were properly decided in favor of those defendants, the district court would have no jurisdictional basis on remand to hear the state law negligence claims against the individual defendants, since there would not then be a substantial federal claim against them which would support pendent jurisdiction. See Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); UMW v. Gibbs, supra, 383 U.S. at 725, 86 S.Ct. 1130. We express no opinion as to whether, if on remand the district court decides to try the state law claims, the City may be required under Pennsylvania law to respond in damages for the intentional torts (such as false arrest) of its employees.