## SULLIVAN MINING CO. v. ASCHENBACH.

Circuit Court of Appeals, Ninth Circuit.
June 10, 1929.

Rehearing Denied July 15, 1929.

No. 5766.

James E. Gyde, of Wallace, Idaho, and Post & Russell, of Spokane, Wash., for appellant.

David Herman and Williams & Cornelius, all of Spokane, Wash., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge. The sole question for decision is of the meaning of the term "accident" as it is used in the Workmen's Compensation Law of Idaho (Idaho Compiled Statutes 1919, § 6213 et seq.). If under any reasonable view of the evidence the injury for which plaintiff below (appellee here) sued and recovered was not "accidental" within such statutory meaning, appellant concedes the judgment should be affirmed; otherwise it should be reversed and the action dismissed on the ground that the

courts are without jurisdiction of the subject-matter.

Plaintiff's injury was incurred while he was working for appellant as a painter, from January 13 to January 20, 1928. His job was to do the inside painting upon a new zinc smelter appellant was constructing near Kellogg, Idaho. For the work appellant furnished him with a certain brand of paint and a thinner, with instructions to mix them half and half; and this he did. From the first day he had a headache which grew increasingly distressing, and gradually he lost his appetite and his ability to sleep. Shortly after he quit work on the 20th, he became very sick and irrational and was taken to the hospital. It turns out that the thinner, the nature of which at the time was unknown to him, was carbon disulphide, a volatile substance giving off a poisonous gas. He was an experienced painter and assumed that his headaches and other physical discomfort were due to usual paint fumes not as a rule highly or permanently injurious, but more than ordinarily active in the present case, so he thought, because the work was being done in a warm, closed room. The gas from the thinner was extremely poisonous, appellee was ignorant of its character, and appellant failed to warn him, and as a consequence he suffered a serious impairment of his health. If the injury resulted from an "accident," it was compensable under the provisions of the Compensation Act; otherwise it was cognizable in courts of law.

Section 6217 of the act provides that, "If a workman receives personal injury by accident arising out of and in the course of any employment covered by this chapter his employer or the surety shall pay compensation," etc. The act itself attempts no comprehensive definition of the words "accident" or "accidental." By section 6324 it is declared that such injury does "not include a disease except as it shall result from the injury," and by section 6323 as amended in 1927 (1927 Sess. L. p. 148), that, "An 'injury' or 'personal injury' to be compensable must be the result of an accident." By the Supreme Court of the state, however, the term has been construed, and, under familiar principles, by that construction we are bound. In McNeil v. Panhandle Lbr. Co., 34 Idaho, 773, 786, 203 P. 1068, 1073, the court said the act "is to be liberally construed with a view to effect its object and promote justice. * * * This does not mean that the courts should endeavor by construction to extend its provisions to persons not intended to be included by it, but that it shall be so construed as to carry out its purposes and, as

far as is reasonably possible, secure its benefits to all those who were intended to receive them." In that case the court declined to disturb an award made under the Compensation Law by the Industrial Accident Board based upon the theory that the loss of his sight by a workman due to strain in lifting and handling heavy logs constituted an accidental injury. Approval was apparently given to a general statement from page 64 of the Cyc.-Corpus Juris Treatise on Workmen's Compensation Acts, that the word "accident" as used in Compensation Acts is to be understood "in the ordinary sense as meaning an unlooked for and untoward event which is not expected or designed." Idem, Fenton v. Thorley, L. R. App. Cas. (1903) 443. The same view is expressed in the more recent case of Aldrich v. Dole, 43 Idaho, 30, 249 P. 87. There the claimant was employed in driving an automobile truck. Being badly worn the gears would disengage when the truck was traveling at a high rate of speed, and to keep them in position the claimant was in the habit of pressing his leg against the shift lever. Due to the pressure and the more or less frequent impact of the lever when the gears failed to mesh, his knee was in the course of about five weeks so bruised as to result in a permanent physical disability.

With apparent approval the court quotes from Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A. L. R. 107, as follows: "Since the case of Fenton v. Thorley, nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * It is enough that the causes, themselves known and usual, should produce a result which on a particular occasion is neither designed nor expected. The test as to whether the injury is unexpected, and so, if received on a single occasion, occurs 'by accident,' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing."

And from Glasgow Coal Co. v. Welsh, 9 B. W. C. C. 371, as follows: "The learned counsel for the appellants argue that, in order to satisfy the act, there must be some distinct event or occurrence which, taken by itself, can be recognized as an accident, and then that the injury must be shown to have followed as a consequence from that specific event. But this is just the argument that was rejected in Fenton v. Thorley, supra. It is unnecessary to say more; but I venture to add that the argument seems to me to rest upon a misreading of the statute, which can only have arisen from a failure to give an ex-

act attention to the actual words. The statute does not speak of an accident as a separate and distinct thing to be considered apart from its consequences, but the words 'by accident' are introduced, as Lord Macnaghten says, parenthetically to qualify the word 'injury.' "

And from Associated Employers' Reciprocal v. State Industrial Commission, 28 Okl. 249, 212 P. 604, as follows: "It is clear from a consideration of these two sections [which the Idaho court holds to be the same in principle as the Idaho Act] that it was the intention of the law to provide compensation for an injury sustained by an injured employee while engaged in any of the hazardous occupations coming within the act, and if such injury is sustained, it is by the act regarded as an accidental injury, unless excluded for willful injury, etc., as in the act provided, and there is no language in the act authorizing the conclusion that as a prerequisite to the right of compensation the claimant must show that he has suffered some injury resulting from some sudden or violent accident. It is clear that the development of an abscess in the palm of the hand of the claimant in the case at bar, resulting from the continuous use of the hand in using a pick in ditching, is such injury as is compensable under the law."

And from Fidelity & Casualty Co. v. Industrial Accident Commission, 177 Cal. 614, 171 P. 429, L. R. A. 1918F, 856, as follows: " * * * The phrase 'injuries sustained by accident,' as used in the Workmen's Compensation Act [St. 1913, p. 279, § 12], is to be given the broader interpretation in harmony with the spirit of liberality in which it was conceived and in which by the terms of the act we are required to construe it, so as to make it applicable to injuries to workmen which are unexpected and unintentional and which thus come within the meaning of the term 'accidents,' as it is popularly understood."

In harmony with the conclusions reached in these cases, we infer it to be the view of the Idaho Supreme Court that to be accidental in contemplation of the Compensation Act it is not a prerequisite that the injury result from a sudden or violent cause or that the cause or agency be accidental or unexpected, but, as expressly stated by that court, "a workman may be said to receive a personal injury by accident arising out of and in the course of his employment when, from the operation of known and usual causes, he receives an injury, neither expected nor designed." The contention that to be accidental, the injury must result from a single,

sudden occurrence was definitely rejected. Said the court: "Now if the single pressing of the knee against the lever and the single striking of the knee by the lever would result in an injury by accident, can we say that the injury actually received was not caused by accident merely because there was a continuation of the causes that brought on the injury? The statute does not restrict compensation to an injury that results from single event, and there would seem to be no sound reason for holding that an injury occasioned by a number or series of events is not within the act."

We are unable to see how, under any view of the evidence, plaintiff can escape the application of the rule of this decision. If any distinction is to be made, the "accidental" element would seem to stand out more clearly in the present case. There the claimant was cognizant of all material conditions including the existence and character of the forces which in time operated to disable him. The unexpected or unanticipated consisted only of the cumulative effect. Here the plaintiff was without knowledge of the character of the element or force by which he was disabled. In that case the ultimate injury resulted from repeated occurrences through a period of nearly five weeks, whereas here plaintiff was wholly disabled in the course of a little more than a week. In neither case was the injury designed or expected. In common understanding we think plaintiff's injury would be regarded and spoken of as accidental, or, in more technical language, as "an unlooked for mishap or an untoward event which was not expected or designed." Nor do we think the injury was in any real sense an occupational disease. It was more in the nature of an acute case of poisoning. Had appellee suffered an impairment of health as the gradual result of breathing fumes from paints in common use and of working under ordinary conditions, that would be classed as an occupational disease. But here his disability resulted unexpectedly and suddenly from an unusual agency. Hazard from its use was not a common incident of a painter's occupation, but was fortuitous. The distinction between such a case and an occupational disease is clearly recognized in Mauchline v. State Insurance Fund, 279 Pa. 524, 124 A. 168; Industrial Commission of Ohio v. Roth, 98 Ohio St. 34, 120 N. E. 172, 6 A. L. R. 1463; Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A. L. R. 363; and Moore v. Service Motor Truck Co., 80 Ind. App. 668, 142 N. E. 19, 20.

With apparent confidence appellee re-

lies. upon the most recent case from the Supreme Court of the state, Reader v. Milwaukee Lbr. Co. (Idaho, decision by divided court) 275 P. 1114. But upon an analysis of the opinion we find nothing in it out of harmony with the earlier opinions of that court. The court assumed the fact to be that the deceased, on account of whose death the claim was prosecuted, had a known "idiosyncrasy toward 'cedar poisoning,' and whenever he came in contact with cedar lumber or worked in and around where cedar lumber was being manufactured he would develop an attack of dermatitis." While engaged in work on cedar lumber he developed such a case in acute form, and as the immediate result his face became flushed and sore; blood poisoning ensued and he died. Said the court: "Whether cedar poisoning might be said to be a personal injury by accident under any circumstances is not necessary to a decision of this case. With respect to one, however, who knew he was susceptible to such poisoning on coming in contact with cedar, an attack of cedar poisoning could hardly be said to be an accident. When deceased came in contact with cedar lumber or worked around it he developed an attack of dermatitis. To him * * * the cedar poisoning was not unexpected. Every time there was cedar lumber around, according to one witness, Reader's face became flushed and florid and 'had sores on it,' and he kept medicines at the mill 'that he used on his face several times a day.' It is too plain to require extended argument that the cedar poisoning was not an unlooked for mishap, or an untoward event." In that respect the case is not unlike Moore v. Service Motor Truck Co., supra.

Decisions in great number from other states have been collected in the briefs, particularly in appellee's brief; but we think that no useful purpose would be subserved by an attempt to review them. They exhibit much diversity, some of which may be accounted for by differences of fact or in statutory provisions. For example, a requirement that to be compensable the injury must result from "violent or external means," as in Oregon, or that the disability must result from a traumatic injury, as in Kentucky, would seem to present a materially different case. So where, as in Massachusetts and some other states, the word "accident" is not used but only "injury," the law is more susceptible to differing interpretations. Undoubtedly the diversity cannot all be explained by either differences in statutory provisions or in point of fact and must to some extent be attributed to a difference of gener-

al judicial attitude. This condition is recognized by the Supreme Court of Idaho, and we think that it has unequivocally indicated that it stands with those courts which have taken the more liberal view of the law and given to it a broader meaning, and to its views we must defer. That such an attitude is not exceptional or without basis of reason, see, in addition to cases already cited, Carroll v. Industrial Commission of Colo., 69 Colo. 473, 195 P. 1097, 19 A. L. R. 107; Matthiessen, etc., Co. v. Industrial Board, 284 Ill. 378, 120 N. E. 249; Fidelity & Casualty Co. v. Industrial Board, 177 Cal. 614, 171 P. 429; Dove v. Alpena Hide, etc., Co., 198 Mich. 132, 164 N. W. 253; Van Vleet v. Public Service, etc., 111 Neb. 51, 195 N. W. 467; Tintic Milling Co. v. Industrial Commission, 60 Utah, 14, 206 P. 278, 23 A. L. R. 325; New Marissa Coal Co. v. Industrial Commission, 326 Ill. 116, 157 N. E. 32; Houston Packing Co. v. Mason (Tex. Civ. App.) 286 S. W. 862; United States Fidelity & Guaranty Co. v. Industrial Commission, 76 Colo. 241, 230 P. 624; and even under the restrictive language of the Oregon law, Dondeneau v. State Industrial Accident Commission, 119 Or. 357, 249 P. 820, 50 A. L. R. 1129.

The judgment is reversed.