## GRAIN HANDLING CO., Inc., et al. v. SWEENEY et al.

### No. 227.

Circuit Court of Appeals, Second Circuit.
March 6, 1939.

Brown Ely & Richards, of Buffalo, N. Y. (David S. Jackson, of Buffalo, N. Y., of counsel), for appellants.

Winton Henry Church, of Buffalo, N. Y., for Sweeney.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., for appellee Kenneth G. McManigal, Deputy Commissioner.

Joseph J. Doran, of Rochester, N. Y., for Compensation Commissioner.

Frank C. Laughlin, of New York City (Frank C. Laughlin, P. Tecumseh Sherman, Joseph W. Kirkpatrick, and Andrew Kalmykow, all of New York City, of counsel), amicus curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree dismissing a bill in equity to review an award made under the Longshoremen's Act (Chapter 18, section 901 et seq., Title 33, U.S. Code, 33 U.S.C.A. § 901 et seq.). The claimant, Sweeney, was, and for twenty-five years had been, a "grain-scooper" in Buffalo: between April 25, 1934 and June 15, 1936, he was in the plaintiff's employ. This work required him to go into the holds of grain ships and there to operate steam shovels, by which the grain was brought within the reach of the moving buckets by which it was discharged. The holds of such ships are filled with the fine dust of the grain, so that the air becomes a fog of minute particles of husk, mustard-seed, dirt, and the like, which is

especially oppressive in humid weather. Sweeney had had tuberculosis in 1918 as a sequela of influenza, but he had recovered, and the disease remained dormant all through the period when he was a "grain-scooper" until about the middle of 1934. At that time he began to have difficulty in breathing, which steadily increased and finally declared itself as a return of his former tuberculosis. This got so bad that by June 15, 1936, he had to give up, totally disabled. The claimant alleged that the air in the holds caused a fibrosis of his lungs, by reason of which the long dormant tuberculosis revived. The judge understood the commissioner to attribute the disability to the fibrosis itself, and perhaps he is right; but in any event the important finding is that Sweeney "had in some manner contracted a tubercular condition which was in a latent state and that his employment as a grain scooper on the vessels unloaded by said employer, including the last one, required him to work in thick grain dust, causing the latent tubercular condition to become active and gradually grow worse over a period of two years prior to June 15, 1936, so that it was in an active and disabling state on the day he quit work, June 15, 1936; that ever since said date up to the last hearing the claimant has been totally disabled for performing any remunerative work as the result of the lighting up of this latent tubercular condition due to his employment in grain dust". The plaintiff asserts that this finding is not justified by the evidence; and that, even if it is, the claimant's disability did not result from an "injury", within the meaning of § 902(2) of Title 33.

The first question depends, not upon whether we should have reached the same conclusion as the commissioner—though I do not mean to suggest that we should not—but upon whether there was any substantial evidence to support his finding. Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, did indeed hold that there were two "jurisdictional" issues as to which our review was more searching; but the causal connection between the employment and the "injury" was not one of these, and could not well have been, if any findings are to have the usual weight accorded to those of an administrative tribunal. There was quite enough testimony to justify the conclusion that hard manual work, done for long periods on and in such atmospheres, tends to produce fibrosis of the lungs, which in turn weakens re-sistance to any latent tubercular infection, and allows the germs again to become active. Indeed, there cannot really be any fair doubt that this is just what happened in Sweeney's case, and that when he entered the plaintiff's employ, he was already ripe for a recrudescence of the disease from which he had, strictly speaking never wholly recovered.

The important question is whether the facts so established brought the case within the statute; in other words, whether the disability was an "injury" arising out of Sweeney's employment. If so, it must have been either an "accidental injury", or an "occupational disease", (§ 902(2), The commissioner thought it was the second; I understand the judge to have held that it was the first. I agree with the commissioner. It is indeed necessary not to extend the statute so as to make it a general health insurance, and to avoid this the coverage must be limited to diseases resulting from working conditions peculiar to the calling. In order to recover a workman must be exposed to hazards greater than those involved in ordinary living, and the disease must arise from one of these. Anderson v. Hoage, 63 App.D.C. 169, 70 F.2d 773; McNeely v. Sheppeard, 5 Cir., 89 F.2d 956; Goldberg v. 945 Marcy Avenue Corp., 276 N.Y. 313, 12 N.E.2d 311. But although we must find special dangers in the employment and that the disease arises from them, I can see no reason for limiting the protected class to those who have a normal resistance to such diseases, or for excluding those who are abnormally vulnerable. No doubt it would be most desirable that the second group should not be employed under such conditions at all, but we cannot charge them with ignorance, or carelessness, or acceptance of the risk, because they are. Such considerations are alien to the underlying theory of workmen's compensation, which makes industrial disabilities, so far as they are truly attributable to the industry, a part of the cost of production, and throws compensation for them upon the consumer. This is not because the consumer is at fault for creating the demand whose supply produces the disabilities, but because a loss shared among many is less a loss than if borne by one; the sum of the parts is less than the whole. Since all who actually work in the industry are necessary to the supply—as the industry is in fact organized—the injuries of all, whether or not they are normally resistant to the unwhole-

some conditions pervading it, are part of the cost of producing that supply, and compensation for them is within the scheme: it would be an especially harsh interpretation which should exclude just those who are most in need of protection. I can see no escape from this conclusion except by covertly introducing the notion that such individuals should not be employed, and that because they should not, their employers should not be responsible for them. In agreement with my understanding are Lea Mathew Shipping Corp. v. U. S. Emp. Comp. Comm., D.C., 56 F.2d 860; Todd Dry Docks, Inc. v. Marshall, 9 Cir., 61 F.2d 671, and Hoage v. Employers' Liability Ass'n Co., 62 App.D.C. 77, 64 F.2d 715, in each of which the workman was not the victim of an "accidental injury". Cf. Salinas v. New Amsterdam Casualty Co., 5 Cir., 67 F.2d 829; Sullivan Mining Co. v. Aschenbach, 9 Cir., 33 F.2d 1.

■ I can see no difference between a fresh infection and the awakening of an old one. The statute is not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies: an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs. We are told that if we construe the act so broadly, premiums will go to prohibitive heights, or all who enter a calling must be examined, and the weaker ones excluded. Perhaps so: it is possible that the added costs of the system will so raise prices as to throw some workmen out of employment: that has always been urged against legislation of this sort. So far as it is true, one must choose between cheaper and larger production, carried on with less regard for the producers, and a restricted output, made under better conditions. Whatever be the proper path, it is not for courts to plot it: it is enough that the award here carries out the scheme of the act, and fairly falls within the language chosen to embody it.

Decree affirmed.

SWAN and AUGUSTUS N. HAND, Circuit Judges, concur with memorandums.

SWAN, Circuit Judge (concurring).

Although I am willing to concur in the judgment I cannot refrain from expressing my doubt whether the interpretation we are putting on the statute does not virtually read out of it the adjective "occupational" which qualifies such diseases as are made compensable. In effect, we are holding that the lighting up of a latent tuberculosis by the breathing of grain dust creates an "occupational disease" in the particular employee so affected, although 99 per cent. of the workmen may never get tuberculosis as a result of laboring under the same conditions for equally long periods of time. This seems to extend the term "occupational disease" further than any of the authorities cited, which, however, in situations quite similar to the one at hand have permitted recovery on the ground that the lighting up of a latent disease is an "accidental injury." This is an equally strained interpretation of the statutory language, and of the two I prefer the former.

AUGUSTUS N. HAND, Circuit Judge (concurring).

I think it is a fair inference from the proof that any condition of latent tuberculosis is likely to become active by working in grain dust. Many persons are subject to this infirmity and if such persons are likely to develop tuberculosis from working in dust the resultant condition would seem to be an occupational disease— that is, a disease peculiar to and arising from the occupation.

Even if the disease would not come upon a person free from latent tuberculosis, yet if there are substantial numbers of persons having latent germs of tuberculosis who are likely to develop that disease, they are entitled to the benefit of the statute if their condition is aggravated by conditions peculiar to their occupation. On the other hand, I do not think that a disease would be "occupational" if it would only develop in sporadic and very rare instances and never among persons in normal condition. To be an "occupational disease" there must be a likelihood that it will arise among a substantial number of workmen (whether they possess physical infirmities or not) because of the occupation in which they are engaged. I think there was such a likelihood in the present case and, therefore, the judgment should be affirmed.