**INSURANCE COMPANY OF NORTH AMERICA, Petitioner,**

v.

**U.S. DEPT. OF LABOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Freelove Peterson, (Widow); Paul Peterson, (Decedent), Respondents.**

No. 1068, Docket 91-4193.

United States Court of Appeals, Second Circuit.

Argued April 1, 1992.

Decided July 16, 1992.

Richard N. Curtin, Boston, Mass. (Scott E. Richardson, Parker, Coulter, Daley & White, Boston, Mass., of counsel) for petitioner.

Samuel J. Oshinsky, Washington, D.C. (Marshall J. Breger, Sol. of Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, Washington, D.C., of counsel) for respondent Director, Office of Workers' Compensation Programs.

Matthew Shafner, Groton, Conn. (Amy M. Stone, Carolyn P. Kelly, O'Brien, Shafner, Bartinik, Stuart & Kelly, Groton, Conn., of counsel) for respondents Freelove Peterson (Widow) and Paul Peterson (Decedent).

Before: MINER and McLAUGHLIN, Circuit Judges, and MARTIN, District Judge.[1]

MINER, Circuit Judge:

Petitioner Insurance Company of North America ("INA") seeks review of a United States Department of Labor Benefits Review Board ("BRB" or the "Board") order awarding death benefits to Respondent Freelove Peterson, widow of Respondent Paul Peterson, under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"), 33 U.S.C. §§ 901 *et seq.* Decedent Paul Peterson was hospitalized in November 1984 and diagnosed as having a malignant lung tumor. The tumor was caused, at least in part, by Peterson's exposure to asbestos while working as a submarine builder in the 1960s. Approximately one month after entering the hospital for treatment, Peterson died from the ailment. Thereafter, Mrs. Peterson filed two claims under the LHWCA. The first, on behalf of her husband, sought disability benefits for the period of his hospitalization. The second sought death benefits for herself as his surviving widow.

An Administrative Law Judge ("ALJ") heard the case and found that the LHWCA in effect in 1967, the date of Peterson's last

1. Hon. John S. Martin, Jr., United States District Judge for the Southern District of New York, sitting by designation.

possible exposure to asbestos, applied. Benefits were denied upon a finding that Peterson's injury did not meet the situs requirement, as defined in the Act prior to amendment in 1972, that the injury occur "upon the navigable waters of the United States (including any dry dock)." 33 U.S.C. § 903(a) (superseded). Mrs. Peterson appealed to the Board, which reversed the ALJ's decision. The Board ruled that, in cases of long latency diseases caused by exposure to harmful stimuli, the appropriate law to apply is the law in effect on the date the disease manifests. The Board then applied the LHWCA as amended in 1972 and determined that Peterson met the definition of employee under the amended Act, 33 U.S.C. § 902(3), and that he had been injured at an appropriate situs as redefined by the amendment, 33 U.S.C. § 903(a). Thus, the BRB awarded death benefits to Mrs. Peterson and remanded to the ALJ for calculation of disability benefits.

On appeal, INA argues that the BRB erred when it utilized the law in effect on the date of manifestation of the disease. INA maintains that the law in effect at the time of last exposure should govern because nothing in the language of the Act, amendments, or the legislative history indicates that the date of manifestation rule should be used to determine the applicable law. Additionally, INA contends that use of the manifestation rule results in an impermissible retroactive application of the amended Act by expanding the class of individuals entitled to recover for exposures occurring prior to the amendments' effective date. The Director, Office of Workers' Compensation Programs, United States Department of Labor (the "Director") agrees with this position but nevertheless urges us to affirm the BRB's award of benefits on the alternate ground that substantial evidence supports a finding that Peterson was exposed to asbestos upon the navigable waters of the United States as defined in the pre–1972 Act. INA, on the other hand, maintains that the ALJ was correct in finding that Peterson was not injured upon the navigable waters of the United States and that recovery

therefore should be denied. We conclude that the Board did not err in holding that the law in effect on the date of manifestation of the cancer is the appropriate law to apply, and hence deny the petition for review. As such, we need not address the alternate ground for affirmance proposed by the Director.

## BACKGROUND

Decedent Paul Peterson worked alternately as a carpenter and a joiner for General Dynamics Corporation in its Electric Boat Division between November 13, 1962, and January 6, 1967. The Division was located on the Thames River in Groton, Connecticut. While at General Dynamics, Peterson worked in the "Model Shop," assembling scale models of components used in submarine construction, and in the "Joiner Shop," building battery wedges for submarines. Both jobs required Peterson to perform certain tasks inside submarines located on the river, although he spent the majority of his time working in the buildings located on land adjacent to the river. Testimony before the ALJ established that Peterson inhaled asbestos in both the Model and Joiner Shops, and possibly while aboard the submarines as well.

After leaving General Dynamics in 1967, Peterson worked at a variety of occupations. On November 3, 1984, he entered the hospital with breathing problems. Tests revealed a cancerous tumor in his lung and he remained hospitalized for treatment. Approximately one month later, Peterson died of the ailment. His death certificate reported the cause of death as metastatic lung cancer due to, or resulting from, chronic obstructive lung disease.

In late 1985, Peterson's wife received a letter from one of the treating physicians, advising her of the possibility that her husband's ailment had resulted from his exposure to asbestos during his tenure at General Dynamics. Mrs. Peterson timely notified the appropriate parties of Peterson's disability and death. *See* 33 U.S.C. § 912(a). She filed a claim for disability benefits on behalf of her deceased husband

at that time, and later submitted a claim for death benefits as his surviving widow. Both claims were filed within the statute of limitations period set forth in the Act. *See id.* § 913(a).

An initial attempt to negotiate a settlement failed, and a hearing before an ALJ was scheduled. After the hearing, the ALJ concluded that the law in effect at the time Peterson was last exposed to asbestos controlled the outcome. In order to be compensated under the Act in effect on January 6, 1967, the last date Peterson possibly could have been exposed, an employee must have been disabled by, or died from, an injury occurring "upon the navigable waters of the United States (including any dry dock)." *Id.* § 903(a) (superseded). The ALJ found that Peterson's asbestos exposure had occurred in buildings located on land adjoining the Thames, not upon the river (or a dry dock), and therefore held that benefits should be denied because the LHWCA did not cover Peterson.

Mrs. Peterson appealed to the Board. In an en banc decision, the Board ruled that the ALJ's decision to utilize the law in effect at the time of last exposure was improper. The Board held that the law in effect on the date of manifestation of a long latency disease should be employed to determine eligibility for benefits under the LHWCA. Since Peterson's cancer manifested in 1984, the Board determined that the Act as amended in 1972 provided the appropriate test for coverage. The Board found that Peterson met the statutory definition of employee and that he was injured at a situs embraced by the amended Act. Hence, the Board awarded death benefits to Mrs. Peterson and remanded to the ALJ for calculation of disability benefits. INA appealed to this Court before the ALJ calculated the benefits, but the calculation has since been completed. Therefore, jurisdiction is appropriate under 33 U.S.C. § 921(c). *See St. Louis Shipbuilding & Steel Co. v. Casteel,* 583 F.2d 876, 876 n. 1 (8th Cir. 1978); *Nacirema Operating Co. v. Lynn,* 577 F.2d 852, 853 n. 1 (3d Cir.1978), *cert. denied,* 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979).

## DISCUSSION

The issue in this case concerns the scope of coverage of the LHWCA, as amended in 1972. Prior to 1972, section 3(a) of the Act provided compensation to employees suffering a disability or death "result[ing] from an injury occurring upon the navigable waters of the United States (including any dry dock)." 33 U.S.C. § 903(a) (superseded). This language imposed an injury situs requirement in order for an employee to invoke the LHWCA such that workers in maritime-related occupations could not apply for compensation under the LHWCA if their injuries occurred on land or on structures attached to land. *See generally Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). In 1972, Congress enacted the Longshore and Harbor Workers' Compensation Act Amendments, Act of October 27, 1972, Pub.L. No. 92–576, §§ 2(c), 21, 86 Stat. 1251, 1265, amending, *inter alia,* section 3(a) of the Act to permit compensation for injuries "occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). The amendment thereby broadened the areas at which injury could occur for employees to qualify for compensation under the Act.

At the same time, Congress enacted a status requirement for recovery, allowing only certain defined classes of employees to qualify for compensation under the Act when injured. *See* 33 U.S.C. § 902(3). No one disputes that Peterson, by virtue of his occupations as a carpenter and a joiner assisting in submarine building, meets the status requirement. The question of whether he meets the situs requirement is at issue. Specifically, at the time of Peterson's *exposure* to asbestos (1962–67), the LHWCA did not provide benefits for any disability or death resulting strictly from an injury, i.e. exposure to asbestos, occurring in either the Model or Joiner Shops, because the Shops were in buildings locat-

ed on land. At the time his cancer *manifested* (1984), however, the situs requirement had been amended to include injuries occurring in buildings situated on land adjoining navigable water. The issue, therefore, is whether the expanded situs requirement provided after the 1972 amendments applies to employees and their survivors if the employee was exposed before the effective date of the amendments, but was disabled or died after the effective date of the amendments, when the disease manifested.

██ An injury causing disability or death triggers the provisions of the Act. 33 U.S.C. § 903(a). Hence, we must determine when Peterson was injured in order to determine which situs requirement to apply. If the injury happened on the date of last exposure, the pre–1972 Act situs requirement must be met. On the other hand, if the injury took place on the date the cancer manifested, the amended Act supplies the situs test. We therefore turn to the definition of the date of injury for purposes of the Act.

██ INA and the Director claim that Peterson's injury occurred on the date he was last exposed to asbestos. The Director also argues that we should defer to his position because it represents an administrative agency interpretation of a statute, *see Martin v. Occupational Safety & Health Review Comm'n,* — U.S. ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991). We previously have ruled that the Director is not entitled to special deference in the face of a Board ruling, *Director, OWCP v. General Dynamics Corp. (Krotsis),* 900 F.2d 506, 510 (2d Cir.1990), but the Director contends that, in light of *Martin, Krotsis* should be overruled. We need not address the continued vitality of *Krotsis,* however, as it is well settled that, even where deference is owed, if the agency's construction of the statute is unreasonable or contrary to the statute or clear legislative intent, a court will not defer to it. *See Martin,* 111 S.Ct. at 1175–76; *Wilson v. United States,* 959 F.2d 12, 15 (2d Cir.1992) (citations omitted). We find the Director's construction of the amended section 903(a) unreasonable.

Recently, the Ninth Circuit directly addressed this issue in *SAIF Corp./Oregon Ship v. Johnson,* 908 F.2d 1434 (9th Cir. 1990), a decision upon which the BRB chiefly relied in reaching its decision in this case. In *SAIF Corp.,* the court held that the date of manifestation of a long latency disease, in that case asbestosis caused by asbestos inhalation, constituted the date of injury for purposes of section 903(a). *Id.* at 1438–40. As here, the disabled worker in *SAIF Corp.* was exposed to asbestos on land adjoining the navigable waters of the United States before the effective date of the 1972 amendments. The asbestosis did not manifest until 1979. *Id.* at 1435–36. The Ninth Circuit applied the situs requirement of the amended Act based on the date the disease manifested and thereby permitted the employee to recover.

Relying on its prior decision in *Todd Shipyards Corp. v. Black,* 717 F.2d 1280 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984), the Ninth Circuit in *SAIF Corp.* held that the employee's " 'injury' occurred when 'the occupational disease manifested itself through a loss of wage-earning capacity.' " *SAIF Corp.,* 908 F.2d at 1439 (quoting *Black,* 717 F.2d at 1291). *Black* was decided in the slightly different context of determining the time of injury for purposes of computing disability benefits under the LHWCA. Nonetheless, *SAIF Corp.* adopted the three reasons set forth in *Black* for utilizing the date of manifestation approach. First, the manifestation rule best comports with the LHWCA's "paramount goal" of compensating workers for lost earning capacity stemming from occupational diseases. Second, the date of manifestation most realistically defines when the injury occurs because a person would not consider himself injured at the time of exposure. Finally, the trend in statutes and court decisions in instances of diseases with long latency periods favors application of the manifestation rule. *Id.* at 1439 (quoting *Black,* 717 F.2d at 1289). *Black* also had rejected the argument that "the date of last exposure rule protects employers and their insurers from

liability disproportionate to that which was anticipated at the time the insurance was purchased." *Black*, 717 F.2d at 1292. This rationale "unjustifiably place[s] the burden of unanticipated liability on injured workers rather than on employers and insurers." *Id.*

In addition to *SAIF Corp.* and *Black*, two other cases have applied the manifestation rule to comparable aspects of the LHWCA. In *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1031 (5th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985), the Fifth Circuit ruled that the date of manifestation of asbestosis controlled the determination of whether an injury occurred before or after the 1972 amendments. In that case, an employee had brought an unseaworthiness claim against the owner of the vessel on which he had worked. Such a claim was permissible before the 1972 amendments, but impermissible thereafter. *Id.* at 1028. The court, relying in part on *Black*, noted that "a worker who is exposed to asbestos or similar fibers does not always contract pulmonary disease. The date of injury, therefore, is most realistically defined as the date that the disease actually manifests itself." *Id.* at 1031. The Fourth Circuit likewise concluded that the manifestation rule applies in LHWCA cases in the context of determining when to utilize the special fund created pursuant to section 8(f) of the LHWCA, 33 U.S.C. § 908(f). *Newport News Shipbuilding and Dry Dock Co. v. Harris*, 934 F.2d 548, 551–52 (4th Cir.1990) (citations omitted).

██ We find the reasoning of these opinions compelling. In addition, the long established rule in this circuit is that, in LHWCA cases of latent disease, the statute of limitations does not begin to run until the disease manifests. *Travelers Ins. Co. v. Cardillo*, 225 F.2d 137, 142–43 (2d Cir.), *cert. denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). Hence, even under the pre–1972 Act, the statute of limitations did not commence running until Peterson's injury manifested. This rule recognizes that, while Peterson's inhalation of asbestos certainly produced the tumor

which injured him, a causal event, such as inhalation, is not necessarily an injury, nor does it necessarily define when the injury occurred. *Cf. Banks v. Chicago Grain Trimmers Ass'n*, 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968) (upholding award of benefits based on finding of causal connection between injury upon navigable waters and fall at home several hours later); *Andras v. Donovan*, 414 F.2d 241, 243 (5th Cir.1969) (per curiam) ("It is well established that an injury occurring on land may be compensable under the [LHWCA]—if its cause originated on the water.") (citations omitted); *Mississippi Shipping Co. v. Henderson*, 231 F.2d 457, 459 (5th Cir.1956) (benefits awarded for heart attack on shore resulting from injury on water). In fact, Peterson worked for almost eighteen years after the last date he possibly could have been exposed. While his body throughout that time may have been reacting to the asbestos, without any overt deleterious effects, we see no cause in the present context for deviating from the manifestation rule in determining when Peterson was injured. *See Grain Handling Co. v. Sweeney*, 102 F.2d 464, 466 (2d Cir.) (Learned Hand, *J.*) ("The [LHWCA] is not concerned with pathology, but with industry disability; and a disease is no disease until it manifests itself."), *cert. denied*, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939).

This principle is in keeping with the Act's requirement that the injury must result in disability or death before compensation can be sought. Under the terms of the Act itself, the cause of action does not arise until disability or death occurs. 33 U.S.C. § 903(a). Thus, there can be no justification for applying the law in effect at the moment of last exposure, because at that time, even if the situs requirement were met, Peterson was not entitled to invoke the Act or maintain a suit thereunder until his injury resulted in disability or death. *See State Ins. Fund v. Pesce*, 548 F.2d 1112, 1114 (2d Cir.1977).

*Pesce* dealt with the question of the retroactivity of the 1972 amendments to the LHWCA. Those amendments expanded the availability of death benefits under the

Act to the survivors of injured employees, even if the injury did not cause death. *Id.* Prior to 1972, only those survivors of employees who died as a result of their injuries could recover death benefits. We ruled, as did many other circuits, that because the right to death benefits was a separate cause of action which did not accrue until death, the law in effect at the time the cause of action became viable, i.e. when the employee died, determined the survivors' entitlement to death benefits. *Id.; see also Travelers Ins. Co. v. Marshall,* 634 F.2d 843, 846–49 (5th Cir.1981); *Puig v. Standard Dredging Corp.,* 599 F.2d 467, 469–70 (1st Cir.1979); *Todd Shipyards Corp. v. Witthuhn,* 596 F.2d 899, 901–02 (9th Cir.1979); *Casteel,* 583 F.2d at 877–78; *Lynn,* 577 F.2d at 853–54; *Norfolk, Baltimore & Carolina Lines, Inc. v. Director, OWCP,* 539 F.2d 378, 380–81 (4th Cir.1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977). In so ruling, we rejected the argument, advanced here by INA and the Director, that the statute was being applied retroactively. "Because the death which gave rise to application of the amendment occurred after the amendment's effective date, ... the amendment was being applied only prospectively, not retrospectively." *Pesce,* 548 F.2d at 1114; *see also Puig,* 599 F.2d at 470; *Witthuhn,* 596 F.2d at 902; *Lynn,* 577 F.2d at 854.

Likewise, the disease which gave rise to Mrs. Peterson's current claims did not disable or kill her husband until after the amendment's effective date. Thus, the Director's contention that use of the date of manifestation results in retroactive application of the 1972 amendment is incorrect. There is no basis on which to distinguish between the present case and *Pesce* as both involved an expansion by the 1972 amendments to the LHWCA of the class of persons entitled to benefits under the Act.

## CONCLUSION

■ Based on the foregoing, we conclude that the date of manifestation of an occupational disease with a long latency period determines whether the LHWCA as amended applies to an employee or survivor seeking benefits thereunder. The BRB properly granted benefits under the LHWCA as amended in 1972. The petition for review of the Benefits Review Board order is denied.

JOHN S. MARTIN, Jr., District Judge, dissenting:

Paul Peterson was employed by General Dynamics at the Electric Boat Division in Groton, Connecticut, from 1962 to 1967. For the entire time he was employed there he worked in the Model Shop and Joinder Shop. Since these facilities were not "upon navigable waters of the United States" his work there was not covered under the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"). Therefore, had he been injured at work in 1967, he would not have been entitled to compensation from his employer under the LHWCA. Indeed, it is undisputed that had it been determined at any time prior to 1972 that Peterson had contracted cancer as a result of exposure to asbestos in either the Model Shop or Joinder Shop between 1962 and 1967, he would not have had a claim against his employer. This result is logical—since Peterson's workplace was not covered under the Act, his employer had no liability to him under the Act for injuries he sustained there.

The Court holds today, however, that because of a change in the law in 1972 extending coverage to employees such as Peterson, that Peterson's estate is entitled to compensation under the Act for injuries he sustained between 1962 and 1967.

As this Court noted in *Weise v. Syracuse University,* 522 F.2d 397, 411 (2d Cir.1975):

The manifest injustice of such *ex post facto* imposition of civil liability is reflected in the general rule of construction that absent clear legislative intent statutes altering substantive rights are not to be applied retroactively.

*See also Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("retroactivity is not favored in the law").

By adopting a manifestation trigger for coverage under the amended LHWCA, the

majority creates a legal liability for Peterson's employer that did not exist at the time of his employment. At the same time the majority states that the Director's contention that this "results in retroactive application of the 1972 amendment is incorrect." (Opinion, p. 1406).

The flaw in the majority's reasoning is apparent if one simply follows the logical consequences of one of its statements. The majority states, "we must determine when Peterson was injured to determine which situs requirement to apply." (Opinion, p. 1404). It then determines that he was injured in 1984 when his cancer manifested itself. If that is true, Peterson was injured in the hospital where the medical tests were administered, not "upon the navigable waters" or any adjoining area under the control of General Dynamics. Clearly, the manifestation of Peterson's cancer did not establish either the time or the place of his injury.

The majority relies heavily on the reasoning in *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434 (9th Cir.1990) to support its contention that the manifestation trigger should apply. However, the *SAIF Corp.* court failed to consider the crucial distinction between applying a new rule retroactively to create an entirely new liability, and the retroactive application of a statute dealing only with procedures or remedies.

In *SAIF Corp.*, the court relied on its prior holding in *Todd Shipyards Corp. v. Black*, 717 F.2d 1280 (9th Cir.1983), *cert. denied*, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984), as the basis for utilizing the date of manifestation rule in cases involving diseases with long latency peri-

ods. *SAIF Corp.*, 908 F.2d at 1439–40. Although the majority recognized that "*Black* was decided in a slightly different context" they embraced, without question, that court's justifications for applying a manifestation trigger. (Opinion, p. 1404).

In *Black*, the court held that "the date the disease manifests itself determines the time of injury for purposes of calculating compensation levels." *Black*, 717 F.2d at 1293. Thus, *Black* concerned only the extent of an existing liability. The question before the Court today, however, is whether the Petitioner should incur a new substantive liability.[1] As noted above, it is well established that courts will avoid retroactive application of law that creates new substantive rights. *See Bradley v. Richmond School Board*, 416 U.S. 696, 720, 94 S.Ct. 2006, 2020–21, 40 L.Ed.2d 476 (1974).

The *SAIF Corp.* court cited language in *Black* that, " '[i]n cases of disease with long latency periods, the trend is clearly toward the application of the time of manifestation rule.' " *SAIF Corp.*, 908 F.2d at 1439 (quoting *Black*, 717 F.2d at 1290). In all but one instance, however, the cases cited to establish this trend involved a procedural issue—the tolling of the statute of limitations—rather than a new substantive claim.[2]

It is, of course, appropriate for courts to apply different triggers in cases that implicate different policy considerations. If a person sustains a compensable injury of which he is unaware, it would be unreasonable to suggest that the statute of limitations should begin to run before the injury manifests itself. It is equally unreasonable to impose a new liability on a party long after the event, when the party no longer

---

**1.** The D.C. Circuit in *Hastings v. Earth Satellite Corp.*, 628 F.2d 85, 93 (D.C.Cir.), *cert. denied*, 449 U.S. 905, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980), recognized that extension of the Act's "protection to certain workers engaged in maritime employment who were not previously covered," changed principles of substantive law.

**2.** The *Black* court cited *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 115–17 (D.C.Cir. 1982) (manifestation of disease triggered statute of limitations for asbestosis); *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949)

(manifestation of disease triggered statute of limitations for silicosis); *Todd Shipyards Corp. v. Allan*, 666 F.2d 399, 401 (9th Cir.), *cert. denied*, 459 U.S. 1034, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982) (manifestation of disease triggered statute of limitations for purposes of LHWCA); and *Clutter v. Johns–Manville Sales Corp.*, 646 F.2d 1151, 1158 (6th Cir.1981) (manifestation of disease triggered statute of limitations for asbestosis), as cases establishing a trend toward the use of the date of manifestation trigger. *Black*, 717 F.2d at 1290.

has the opportunity to modify its conduct so as to avoid liability or to make a reasoned choice among alternative courses of action in light of the economic consequences that might be reasonably anticipated. Not surprisingly, this distinction has regularly been recognized by the courts. *Compare Insurance Co. of North America v. Forty–Eight Insulations, Inc.,* 633 F.2d 1212, 1220 (6th Cir.1980) (time of last exposure triggered coverage under insurance policy) *with Clutter v. Johns–Manville Sales Corp.,* 646 F.2d 1151, 1157 (6th Cir.1981) (date of manifestation triggered statute of limitations).

The *Black* court cited only one case that involved a substantive issue, *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.,* 682 F.2d 12 (1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). In *Eagle–Picher,* the court established the date of manifestation of disease as the trigger for coverage under a Comprehensive General Liability policy ("CGL").[3] *Eagle–Picher,* 682 F.2d at 19. The holding in *Eagle–Picher,* however, has not persuaded this or other circuits to follow its lead. The Third, Fifth, Sixth and Eleventh Circuits have all ruled that coverage under a CGL policy is triggered by exposure to asbestos during the policy period. *See ACandS Inc. v. Aetna Casualty & Surety Co.,* 764 F.2d 968, 973 (3rd Cir. 1985); *Porter v. American Optical Corp.,* 641 F.2d 1128, 1145 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981); *Forty–Eight Insulations,* 633 F.2d at 1223; *Commercial Union Ins. Co. v. Sepco Corp.,* 765 F.2d 1543, 1545–46 (11th Cir.1985).

This Circuit rejected a manifestation trigger in *American Home Products Corp. v. Liberty Mutual Ins. Co.,* 748 F.2d 760, 764 (2d Cir.1984), which established injury in fact as the appropriate trigger for asbestos injuries in cases arising under a CGL poli-

cy. In rejecting the date of manifestation approach, this Court noted that "the manifestation of the injury may well occur after the injury itself." *Id.* at 764. Under the injury-in-fact analysis injury is deemed to have occurred when injury can be proved to have arisen during the relevant period. *Id.* Clearly, *American Home Products* is a more appropriate precedent for us to follow than *Eagle–Picher.*

While there is nothing in the record before us to indicate when asbestos exposure creates an injury in fact, other courts have found that the injury occurs at the time of exposure: *See Forty–Eight Insulations,* 633 F.2d at 1218 (medical testimony established asbestos injury occurs upon inhalation); *American Optical Corp.,* 641 F.2d at 1144 (medical opinion established each inhalation of asbestos was bodily injury).

Applying the injury in fact approach here, the date of injury for purposes of the LHWCA is during the period of exposure to the asbestos particles. Because the decedent left General Dynamics in 1967, any exposure to asbestos, and thus any "injury," occurred prior to the amended Act.

In any event, this Court should not use the trigger concept to gloss over the reality of the factual record before it. There is no logical basis for avoiding the conclusion that a change in the law in 1972 is being applied to impose liability for conduct occurring between 1962 and 1967. We should sanction this result only if we are willing to conclude that Congress intended the 1972 amendments to apply retroactively.[4]

In *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court enunciated three factors that a court should examine in the absence of clear legislative intent to determine whether retroactive application of a

---

**3.** The CGL is a standard-form insurance policy that was introduced by the insurance industry in the mid-1960's. The policy was designed to provide liability coverage for injuries caused over a period of time.

**4.** Following the 1972 amendments, Congress adopted the date of manifestation trigger for

section 910 (compensation), and sections 912 and 913 (statute of limitations), indicating Congressional intent to apply these sections retroactively. Congress has not, however, altered section 903(a), which is at issue here. This strongly suggests that Congress did not intend to have this section applied retroactively.

statute would result in a manifest injustice: (1) the nature and identity of the parties; (2) the nature of their rights; and (3) the nature of the impact on the change in law upon those rights. *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

The first prong of the *Bradley* "manifest injustice" test distinguishes between litigation involving private parties only and litigation that involves a public entity. *Bradley,* 416 U.S. at 718, 94 S.Ct. at 2019. Here, the case is between private parties only. The Respondent is not acting in the role of a "private attorney general." *Bradley,* 416 U.S. at 719, 94 S.Ct. at 2020. Rather, she is pursuing a course of private litigation for her own benefit. Thus, the first factor weighs in favor of not applying the statute retroactively.

The second prong of the *Bradley* "manifest injustice" test concentrates on determining whether retroactive application of the statute would "infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020–21. Here, the Respondent seeks a remedy under a cause of action that was non-existent prior to the amended LHWCA. Thus, the 1972 amendments created a new substantive right for the Respondent, and a new substantive liability for the Petitioner. Because retroactively expanding the class of workers covered under the LHWCA would create new legal responsibilities for past conduct, and would infringe upon the Petitioner's vested rights, this weighs in favor of not applying the statute retroactively.

The final prong of the *Bradley* "manifest injustice" test concerns the "possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021. This requires that "the court determine whether a party would have sought to alter its conduct in light of the new standards." *Jackson v. Bankers Trust,* No. 88 Civ. 4786, 1992 WL 111105, at *6 (S.D.N.Y. April 27, 1992). Every employer with workers covered under the LHWCA is required to "secure the payment to [its] employees of the compen-sation payable under" the Act. 33 U.S.C. § 904(a). The employer fulfills this duty by either purchasing insurance or by self-insuring. 33 U.S.C. § 932(a)(1). Here, at the time of employment, the Petitioner was not statutorily required to obtain insurance to cover claims by the decedent's widow.

Thus, the analysis required by *Bradley* compels the conclusion that the 1972 amendments to the LHWCA should not be applied retroactively. Since I believe the majority is applying those amendments retroactively, I dissent.